UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| WENDOLYN LEE, ) <br> ) <br> ) <br>     Plaintiff, ) <br> ) <br> ) <br> VS. ) <br> ) <br> ) <br> CHRIS CRAFT, ET AL., ) <br> ) <br> ) <br>     Defendants. ) | No. 21-2136-JDT-cgc |

ORDER DISMISSING CASE,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*, AND
NOTIFYING PLAINTIFF OF RESTRICTIONS UNDER 28 U.S.C. § 1915(g)

    On February 1, 2021, Plaintiff Wendolyn Lee, who is incarcerated at the Shelby County Criminal Justice Center (Jail) in Memphis, Tennessee, filed a *pro se* civil complaint in the U.S. District Court for the Eastern District of Louisiana. (ECF No. 1.) On March 1, 2021, after being notified the complaint was deficient, he filed both a corrected complaint (ECF No. 3), and a motion to proceed *in forma pauperis*. (ECF No. 4.) On March 4, 2021, Lee filed a motion asking to be placed in protective custody and for a restraining order (ECF No. 5) along with a document titled "Letter to the Court." (ECF No. 6.)

    United States Magistrate Judge Donna Phillips Currault issued an order on March 7, 2021, transferring the case to this district, where venue is proper. (ECF No. 7.) This Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to 28 U.S.C. §§ 1915(a)-(b).

(ECF No. 10.) Lee[1] sues Chris Craft, a Judge of the Shelby County Criminal Court;[2] Amy Weirich, the Shelby County District Attorney (D.A.); the Shelby County Board of Commissioners;[3] Floyd Bonner, the Shelby County Sheriff; James Jones, an attorney; and Jim Strickland, the Mayor of the City of Memphis.

This case is yet another in a series of cases filed by Lee since 2018 in a campaign to persuade the federal courts to intervene in ongoing criminal proceedings against him in Shelby County Criminal Court. Lee's allegations in those prior cases and in this case are overlapping, repetitive, convoluted, and sometimes nonsensical.[4] Virtually all of the claims stem from Lee's belief the Tennessee courts do not have jurisdiction in the criminal case against him because the alleged crime occurred in Arkansas, not in Tennessee. (ECF No. 3 at PageID 34.)[5] From that original premise, Lee has concocted a variety of vague claims against Judge Craft and D.A. Weirich for fraud, conspiracy, and criminal acts such as perjury, obstruction of justice, and aiding

---

[1] In the corrected complaint, Lee listed Chad Taylor and Jessica Hill as additional plaintiffs. (ECF No. 3 at PageID 39.) Magistrate Judge Currault noted that neither of those individuals signed the complaint or submitted a motion to proceed *in forma pauperis*; they are, therefore, not proper plaintiffs in this action. (*See* ECF No. 7 at PageID 82.)

[2] The Shelby County Criminal Court is a court of the Thirtieth Judicial District of Tennessee. *See* Tenn. Code Ann. § 16-2-506(30)(A) ("The thirtieth judicial district is composed of the county of Shelby.")

[3] Lee refers to the Shelby County Board of Supervisors (*see* ECF No. 3 at PageID 30, 33), but the governing body of Shelby County is the Board of Commissioners. *See* www.shelby countytn.gov/1208/Role-of-the-Commission.

[4] For example, Lee alleges Judge Craft "created a statutory court of commerce with international jurisdiction. Foreign from the constitution. (Bogus) Fraud." (ECF No. 3 at Page ID 34.)

[5] The alleged basis for the criminal charges, as described by Lee himself, were set out by the Court in *Young, et al. v. Weirich, et al.*, No. 18-2157-JDT-cgc, 2018 WL 6173897, at *2-*3 (W.D. Tenn. Nov. 26, 2018).

2

and abetting. (*Id.* at PageID 34-36.) He contends that in 2018 he was "kidnapped" at gunpoint in New Orleans, Louisiana by bounty hunters from Memphis in connection with the criminal charges. (*Id.* at PageID 35.)

Lee alleges Judge Craft is racist and says he heard Craft make blatantly racist and discriminatory comments in 2014. (*Id.* at PageID 36.) Judge Craft allegedly stated he "don't care" where the crime happened or "even if it didn't happen." (*Id.* at PageID 35.) Lee further alleges Craft stated "the federal people don't tell him what to do and he don't care what they say," and bragged "about how he controls the federal Judges in the Western District of Tennessee." (*Id.* at PageID 35-36.) Craft also supposedly stated "trials will be forever void" in Lee's case. (*Id.* at PageID 36.)

In his "Letter to the Court" filed March 4, 2021, Lee refers to a newspaper report concerning inappropriate comments made on social media by another Shelby County Judge, James Lammey, which resulted in a public reprimand by the Tennessee Board of Judicial Conduct, but does not explain its relevance to this case. (ECF No. 6 at PageID 68.)[6] He also states D.A. Weirich was "found guilty" of violating the civil rights of a criminal defendant in another case "by withholding evidence and trying to force" the defendant "to testify against herself" (*id.*) but again fails to explain the relevance to this case.[7] In addition, without any factual support whatsoever,

---

[6] *See* www.tncourts.gov/sites/default/files/docs/lammey_reprimand_letter_only_2019_11_18.pdf. Lee does not allege Lammey has any connection with his present criminal proceedings.

[7] Lee's contentions concerning Weirich are misleading, as she was not charged with or found guilty of any criminal conduct. After a defendant's conviction was overturned by the Tennessee Supreme Court because of Weirich's actions, including improperly commenting during closing argument on the defendant's right to remain silent and failing to turn over *Brady* evidence that could be exculpatory, Weirich was charged with ethical violations before the Tennessee Board of Professional Responsibility. She ultimately accepted a private reprimand by the Board. *See* www.fox13memphis.com/top-stories/amy-weirich-addresses-ny-times-article/578826240/.

Lee asserts Weirich and Craft "conspired together to convict and sentence more than 6 thousand black men off to prison under fraudulent indictments that didn't go before a grand jury." (*Id.* at PageID 69.) He claims the indictment in his case was obtained in the same manner. (*Id.*)

Lee maintains he is "constantly held in solitary confinement at the Jail, is allowed to shower only once a month, and has not "seen any kind of day light in 3 years." (ECF No. 3 at PageID 36.) He also states he is "[f]ed only 2 meals a day." (*Id.*)

Lee seeks $70 million in damages and/or "to bring criminal charges against these defendants." (*Id.* at PageID 37.) He further asks the Court to "prevent these criminal acts from happening to others." (*Id.*)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint:

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a

complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a Lee] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Lee filed his complaints pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a Lee must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

*Official Capacity Claims Against Defendants Craft and Weirich*: Any claims against Craft and Weirich in their official capacities must be treated as claims against their employer, the State of Tennessee. However, Lee has no valid claim against the State. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be

5

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation.  But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)).  Tennessee has not waived its sovereign immunity.  *See* Tenn. Code Ann. § 20-13-102(a).  Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983.  *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Lee thus has no claims for money damages against Craft or Weirich in their official capacities.

The Supreme Court has clarified, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)); *see also Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) ("[T]he [eleventh] amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." (citing *Ex Parte Young*, 209 U.S. 123)).

To proceed with official capacity claims for prospective injunctive relief against State employees such as Defendants Craft and Weirich, Lee must allege that the State of Tennessee was

6

responsible for the violation of his constitutional rights because of a practiced custom or policy. *Kentucky v. Graham*, 473 U.S. 159, 16-67 (1985); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The Sixth Circuit has held that to establish the requisite causal link between constitutional violation and policy, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694). Lee has not alleged he was injured due to an unconstitutional policy or custom of the State of Tennessee. He thus also fails to state a claim for prospective injunctive relief against Craft and Weirich.

*Official Capacity Claims Against Defendants Strickland, Bonner, and the Board of Commissioners*: Any claims Lee intends to raise against Mayor Strickland in his official capacity must be treated as claims against the City of Memphis, and any official capacity claims against Sheriff Bonner and the Board of Commissioners must be construed as claims against Shelby County. However, a local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the

7

policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). Lee does not allege he was harmed by a policy or custom of either Shelby County or the City of Memphis.

*Individual Capacity Claims Against Defendants Strickland, Bonner, and the Board of Commissioners*: Lee does not actually allege any wrongdoing by Mayor Strickland, Sheriff Bonner, or the Board of Commissioners[8] and instead appears to sue them because of their positions in the City of Memphis and Shelby County. Under § 1983, however, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Moreover, a supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter*, 532 F.3d at 575-76; *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint generally does

---

[8] Lee has not named any of the actual Commissioners. Such "John Doe" and "Jane Doe" parties are not proper parties unless and until they are identified.

8

not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). Lee does not allege that Strickland, Bonner, or any actual member of the Board of Commissioners, through their own actions, violated his rights.[9]

<u>*Individual Capacity Claims Against Defendants Craft and Weirich*</u>: It is well settled that judges, in the performance of their judicial functions, are absolutely immune from civil liability. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty., Ohio,* 753 F.3d 639, 648-49 (6th Cir. 2014); *Leech v. DeWeese,* 689 F.3d 538, 542 (6th Cir. 2012). Whether a judge or other official is entitled to absolute immunity in a given case turns on a "functional" analysis. *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11 (1982). The "touchstone" for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993).

As stated, Lee alleges Judge Craft committed a litany of misdeeds including fraud, conspiracy, obstruction of justice, discrimination, etc. Those speculative and improbable assertions, however, are supported only by Lee's personal beliefs, not by any factual allegations. Furthermore, the allegation that Craft is asserting jurisdiction over a crime that was committed in Arkansas is a legal conclusion. There is nothing in the complaint from which to reasonably infer Judge Craft's conduct in Lee's criminal proceedings lacked all jurisdiction. *See Mireles*, 502 U.S.

---

[9] Lee complains about various conditions at the Jail—being held in solitary confinement, not being able to shower, not being allowed to go outside (not being able to see "any kind of daylight"), and the amount of food he is given—but he does not allege Defendant Bonner is personally responsible for these alleged deprivations. He also fails to allege he has been harmed by these conditions.

at 11-12. His actions in presiding over Lee's criminal proceedings is within the scope of Judge Craft's judicial function; therefore, Lee's claims against him are barred by judicial immunity.

In their individual capacities, prosecutors such as Weirich generally are entitled to absolute immunity from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *see also Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012) ("A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity."). Again, though Lee accuses Weirich of a variety of misdeeds, his claims are unsupported by factual allegations that are not speculative and conclusory. The complaint thus includes nothing from which to infer that Weirich's actions in prosecuting Lee are not entitled to prosecutorial immunity.

*Claims Against Defendant Jones*: Neither the complaint nor Lee's "Letter to the Court" contains any factual allegations concerning Defendant Jones, his attorney.[10] A complaint that fails to allege any action by a defendant necessarily fails to "state a claim for relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. *See also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (because the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights," the complaint failed to state a claim for relief); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (affirming district court's dismissal of complaint that failed to "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right").

---

[10] The only mention of Jones is in Lee's motion for protective custody and a restraining order. Even in that motion, however, Lee alleges no actual wrongdoing by counsel, stating only that Jones told him he would "never go to trial nor court." (ECF No. 5 at PageID 65.)

In addition, Lee can have no valid § 1983 claim against Jones. Whether a private attorney or a public defender paid by the State, a defense lawyer representing a client in a criminal proceeding does not act under color of state law for purposes of § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981); *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 611 (6th Cir. 2007) (public defenders); *Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976) (private retained defense attorney); *Mulligan v. Schlachter*, 389 F.2d 231, 233 (6th Cir. 1968) (private defense counsel appointed by the court).

*Claims Regarding State Criminal Proceedings*: If Lee is asking the Court to intervene in his state criminal proceedings in some manner, the Court cannot do so. It is not within this Court's jurisdiction to exercise authority over state court criminal matters. States have sovereignty within their boundaries as to crimes committed there. *See* 18 U.S.C. § 3231. Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Sixth Circuit has explained that "[t]he Act thereby creates 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions,' which are set forth in the statutory language." *Andreano v. City of Westlake*, 136 F. App'x 865, 879-80 (6th Cir. 2005) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)).

Federal injunctions against state criminal proceedings can be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971); *see also Doe v. Univ. of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017) ("*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity . . .

11

*Younger* permits abstention when there is an ongoing state criminal prosecution."); *Thurman v. McMinn Cnty. Jail*, No. 17-cv-114, 2017 WL 1593470, at *2 (E.D. Tenn. Apr. 28, 2017) ("To the extent Plaintiff asserts a claim arising out of any criminal charges currently pending against him, any such claim is barred by the abstention doctrine set forth in *Younger*, . . . which provides that federal courts must abstain from entertaining lawsuits by plaintiffs seeking to enjoin a criminal prosecution against them in state court where those ongoing proceedings implicate important state interests and the plaintiffs have an adequate opportunity to raise their challenges in that forum." (citing *Shea v. Littleton*, 414 U.S. 488, 499-504 (1974))).

In this case, Lee does not allege he lacks the opportunity to raise his challenges in state court and cannot show the absence of important state interests in prosecuting those charges; he therefore has not alleged the type of extraordinary circumstances that would permit the Court to become involved in his state-court criminal matter.

For all of the foregoing reasons, Lee's complaint is subject to dismissal in its entirety for failure to state a claim on which relief may be granted.

<u>Opportunity to Amend</u>:  The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA.  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded.").  Leave to amend is not required where a deficiency cannot be cured.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley*

*v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

*Conclusion*: In conclusion, the Court DISMISSES Lee's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED. Because this case is being dismissed, Lee's motion for protective custody and for a restraining order (ECF No. 5) is DENIED as moot.

The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a), that any appeal in this matter by Lee would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Lee, this is the third dismissal of one of his cases as frivolous or for failure to state a claim.[11] This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

---

[11] *See Lee v. Craft, et al.*, No. 20-2424-JDT-cgc, 2021 WL 918767 (W.D. Tenn. Mar. 10, 2021) (dismissed for failure to state a claim); *Young, et al. v. Weirich, et al.*, No. 18-2157-JDT-cgc, 2018 WL 6173897, at *2-*3 (W.D. Tenn. Nov. 26, 2018) (dismissed for failure to state a claim), *aff'd*, No. 19-5012, 2019 WL 2897530 (6th Cir. May 16, 2019), *cert. denied*, 140 S. Ct. 265 (2019).

13

28 U.S.C. § 1915(g).  Consequently, Lee is warned that he is now barred from filing any further actions *in forma pauperis* while he is a prisoner unless he is in imminent danger of serious physical injury.  If any new civil action filed by Lee is not accompanied by the entire $400 civil filing fee, the complaint must contain allegations sufficient to show that, at the time of filing the action, he is in imminent danger of serious physical injury.  If the new complaint does not sufficiently allege imminent danger, it will be dismissed without prejudice; Lee would then have an opportunity to file, within 28 days, a motion to re-open the case accompanied by the entire civil filing fee.

  The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

               s/ **James D. Todd**  
              JAMES D. TODD  
              UNITED STATES DISTRICT JUDGE